**Frederic NOLTIE, Petitioner–Appellant,**

v.

**Kurt PETERSON, Superintendent, Washington Corrections Center, Respondent–Appellee.**

No. 92–36757.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1993.

Decided Nov. 12, 1993.

Sean A. Ayres, Scales & Associates, Seattle, WA, for petitioner-appellant.

Paul D. Weisser, Asst. Atty. Gen., Olympia, WA, for respondent-appellee.

Before: WRIGHT, GOODWIN and HUG, Circuit Judges.

GOODWIN, Circuit Judge:

Frederic Noltie was convicted in state court of sexually abusing his stepdaughter when she was between the ages of five and eight. On appeal from the denial of habeas relief he contends that the trial court denied him due process of law by forcing him to trial before a biased jury. We affirm the district court's denial of habeas relief.

During voir dire Noltie challenged for cause three prospective jurors. The state trial court denied these challenges and Noltie ultimately used all six of his preemptory challenges but was unable to remove two of the jurors. Juror Rhodes and juror F, whose privacy will be protected, served on the jury that ultimately convicted Noltie.

Juror Sun was removed by a preemptory challenge.

During that portion of *voir dire* when jurors are asked to raise their hands in response to general questions put to the entire venire, juror Rhodes indicated that she felt she "might" have some difficulty in being a fair juror in the petitioner's case because she had two young granddaughters, and the case involved sexual abuse of a young girl.

When asked by defense counsel whether Rhodes would want someone with her frame of mind on the jury if she were Noltie, she responded: "No, I don't think so . . . I don't know. I don't know. It is just, I guess children, I don't know."

Rhodes did say that she would "try to be fair," and that it would be a "terrible injustice to [Noltie] not to have a fair trial." She also said the defendant should not be expected to present evidence to show he was innocent. Finally, when asked if she would start out by leaning in favor of the State because of her concern for children, Rhodes responded that this was "just a possibility." The trial judge denied defendant's motion to excuse Rhodes for cause, stating that the dismissal of a juror for actual bias is based on probabilities, not on possibilities.

During the *voir dire* of juror F, she revealed she had been sexually molested by her grandfather at the age of 6 or 7. "[A]lthough nothing serious developed, nevertheless he did try to fondle me, and so forth, and I got away from him and never told anyone until now."

When asked whether there was a likelihood that she would not be fair, juror F responded: "I would say more of a likelihood than a possibility." The state judge then interjected: "[W]hen we say something is likely, we mean more likely than not. Would you be in the position of saying more likely than not you would not be fair and impartial?" F then responded, "I think I would be fair, I truthfully do."

At the conclusion or *voir dire*, Noltie's defense counsel challenged F for cause. The trial judge denied the challenge, saying, "it appears to the Court that her actual words were [that] she thought she could be fair, she just had some concern."

During prospective juror Sun's *voir dire*, she disclosed that she was a board member of the county's commission for the prevention of child abuse and neglect. Sun said she initially thought she could not be impartial in Noltie's case because of her involvement with the agency, but as the questioning went on with the other jurors, she said she had concluded that she would be fair. She also promised to base her decision "on the facts presented."

The defense counsel moved to exclude Sun for cause, but the trial court denied the motion. The defense, as noted above, expended one of its preemptory challenges to remove Sun from the jury.

On appeal, the Washington Court of Appeals affirmed Noltie's conviction. *State v. Noltie*, 57 Wash.App. 21, 786 P.2d 332 (1990). In his subsequent petition to the Washington Supreme Court, Noltie alleged only three claims: 1) that he was denied a fair and impartial jury by the trial court's denial of his challenge for cause of juror Rhodes; 2) the information used in his prosecution was constitutionally defective; and 3) the admission of colposcopic photographs was error. *State v. Noltie*, 116 Wash.2d 831, 809 P.2d 190, 194 (1991). The court subsequently rejected these claims and affirmed Noltie's convictions. *Id.*

### 1. *Procedural Bar*

We first must decide whether Noltie is procedurally barred from raising his constitutional claims of bias as to juror F and prospective juror Sun because he failed to raise these claims on review before the Washington State Supreme Court.

A habeas petitioner may waive a constitutional claim by failing to raise the issue on direct appeal to the state's highest court. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). When a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can demonstrate cause for the proce-

dural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

■ In this case, the parties agree that although Noltie exhausted his state court remedies on his challenge of Rhodes, he did not present his challenges to juror F or prospective juror Sun in the Washington State Supreme Court. Although Noltie did raise his challenge to Sun in the state court of appeals, he abandoned the claim on appeal to the state supreme court.

■ Under Washington law, issues raised in the court of appeals but not in the supreme court result in a waiver of those issues. *Garth Parberry Equip. Repairs v. James,* 101 Wash.2d 220, 676 P.2d 470, 472 n. 2 (1984;); *Wash.R.App.Proc.* 13.7(b). Washington law in some circumstances permits a defendant to raise constitutional issues not raised on direct appeal by the filing of a "personal restraint petition." However, Noltie elected not to file a further petition before the supreme court, contending it would be futile. This claim is now barred by the statute of limitations.

Because he failed to raise his claims before the state supreme court, Noltie's claims of bias as to F and Sun are barred from our review due to a state procedural default, unless Noltie can meet the *Coleman* exceptions mentioned above. Before we discuss those exceptions, we first address Noltie's claim that an appeal to the state supreme court here would have been futile.

### 2. *Futility Doctrine*

■ Noltie contends that he is not procedurally barred from raising his claims as to juror F and prospective juror Sun and cites *Sweet v. Cupp,* 640 F.2d 233, 236 (9th Cir. 1981). In *Sweet,* this Court adopted the holding of "a number of circuits" excusing the exhaustion requirement when the state's highest court had "recently addressed the

issue raised in the petition and had resolved it adversely to the petitioner" unless there has been intervening U.S. Supreme Court decisions on point or "other indications that the state court intends to depart from its prior decisions." *Id.* at 236 (citations omitted). This was the short-lived "futility doctrine" to avoid procedural default.

Subsequent to the *Sweet* decision, however, the Supreme Court criticized futility as an excuse for failing to exhaust one's state-court claims. In *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court stated:

> If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

*Id.* at 130, 102 S.Ct. at 1573; *see also Smith v. Murray* 477 U.S. 527, 535, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (quoting *Engle,* 456 U.S. at 130 & n. 36, 102 S.Ct. at 1573 & n. 36).

Although we have not explicitly overruled *Sweet,* we have rejected the "futility doctrine" in at least one post-*Engle* decision. *See Roberts v. Arave,* 847 F.2d 528, 530 (9th Cir.1988) (citing *Engle,* 456 U.S. at 130, 102 S.Ct. at 1573) (holding that "the apparent futility of presenting claims to state courts does not constitute cause for procedural default").[1] *Engle* was cited and followed by the district court in this case.

Nevertheless, we need not reach the question of any residual viability of *Sweet* because it is clear that waiver of the exhaustion requirement on futility grounds would not have been appropriate in this case even if *Sweet* remained untarnished.

Noltie claims that an appeal to the Washington Supreme Court would have been futile because the court already had rejected his claim of bias as to juror Rhodes, as well as his argument that the standard of proof the

---

1. In a recent case, the Ninth Circuit in dicta cited *Sweet* with approval but did not mention the *Engle* decision. *Beam v. Paskett,* 966 F.2d 1563 (9th Cir.1992), *vacated on other grounds, Arave v. Beam,* —— U.S. ——, 113 S.Ct. 1837, 123 L.Ed.2d 464 (1993).

state trial court used to determine juror bias—preponderance of the evidence—was a violation of his Sixth Amendment right to an impartial jury.

His point is not well taken. As the district court stated:

> The case for the futility doctrine is most compelling where the question is one of pure law, and the circumstances of the individual case are largely irrelevant. Here, however, the particular facts regarding each of the jurors are critical. The state court, if given the opportunity to address the claims involving the two jurors, might find that the trial court abused its discretion in these two cases even under the challenged preponderance of the evidence standard.

The challenges to juror F and Sun are factually distinct from the one involving juror Rhodes. Juror F claimed to have been sexually molested by her grandfather, and Sun was a director of an organization dedicated to the prevention of child abuse. The state supreme court could have found the challenges to juror F and Sun far more compelling than the challenge to Rhodes. Thus, we cannot say with any degree of certainty that presenting these claims to the Washington Supreme Court would have been futile. For these reasons, Noltie's futility argument must fail.

### 3. Exceptions to the Exhaustion Requirement

■ A petitioner who has committed a procedural default may excuse the default and obtain federal review of his constitutional claims only by showing cause and prejudice, or by demonstrating that the failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, —— U.S. at ——, 111 S.Ct. at 2565.

■ Here, Noltie does not contend that he had cause for his procedural default. Instead, he argues that this court should address the merits of his claim because a miscarriage of justice would otherwise result. Noltie claims that the lack of an impartial jury renders his trial fundamentally unfair. He urges this court to expand the list of exceptions to the exhaustion requirement to include situations where a defendant was convicted by a biased jury.

Although the Supreme Court has never provided a definitive interpretation of the term "fundamental miscarriage of justice," there are indications that the Court might make an exception in the exhaustion requirement in a case of actual innocence. *See* James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure*, 1992 Cumulative Supp. § 24.4, at 341 & n. 5.1; *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (The manifest injustice exception is reserved for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.").

Under *Murray*, Noltie must show actual innocence to be excused from his procedural default under the fundamental miscarriage of justice exception. Although his brief asserts his innocence, he has not submitted any evidence in support of innocence other than the evidence he presented to the jury that convicted him. Because he has failed to show actual innocence or to demonstrate cause for his procedural default, we must dismiss Noltie's claims as to juror F and prospective juror Sun as procedurally barred.

### 4. Challenge to Juror Rhodes

■ Noltie alleges that it was clear error and a violation of his Sixth Amendment right to an impartial jury for the state court to have failed to excuse a juror in a criminal case who had openly acknowledged the possibility of prejudice. He also argues that it is unconstitutional under the Sixth Amendment to require a criminal defendant to prove the existence of actual bias by a preponderance of the evidence.

We need not reach the standard of proof issue here to decide this appeal. The challenge to juror Rhodes is not a situation where a less rigorous burden of proof would lead to a different result. The judge's factual determination that Rhodes could perform her sworn duty with impartiality was adequately supported by the record. *See* 28 U.S.C. § 2254(d)(8).

While juror Rhodes initially did admit that she "might" have some difficulty being fair in a case involving sexual abuse of a young

child, she nevertheless repeatedly stated that she hoped she would be fair and that she would try to be fair. The juror also stated that she felt it would be a terrible injustice to the defendant not to have a fair trial.

Because we must pay due deference to the trial judge who sees and hears the juror, we cannot hold that the judge in this case abused his discretion by refusing to excuse Rhodes. "The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading.... It is here that the federal court's deference must operate, for while the cold record arouses some concern, only the trial judge could tell which of these answers was said with the greatest comprehension and certainty." *Patton v. Yount,* 467 U.S. 1025, 1039–40, 104 S.Ct. 2885, 2893, 81 L.Ed.2d 847 (1984).

Thus, the failure to exclude Rhodes from the jury did not violate Noltie's Sixth Amendment right to an impartial jury. His other two claims are procedurally barred. For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**