**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARIA DEL ROSIO ALFARO,
*Petitioner-Appellee*,

v.

DEBORAH K. JOHNSON,
*Respondent-Appellant.*

No. 15-55337

D.C. No.
2:07-cv-07072-CJC

OPINION

Appeal from the United States District Court
For the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted June 14, 2017
Seattle, Washington

Filed July 14, 2017

Before: JAY S. BYBEE, MILAN D. SMITH, JR.,
and MORGAN CHRISTEN, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's grant of Maria Alfaro's habeas corpus relief on her claim, based on *Jones v. Chappell*, 31 F. Supp. 3d (C.D. Cal. 2014), *rev'd sub nom.*, *Jones v. Davis*, 806 F.3d 538, 541 (9th Cir. 2015), that California's post-conviction system for administering the death penalty violates the Eighth Amendment's prohibition against cruel and unusual punishment.

The panel held that Alfaro's claim is barred by her failure to exhaust available state court remedies, and is untimely under Fed. R. Crim. P. 15(c).

The panel held that Alfaro is not excused from her failure to exhaust the claim. The panel wrote that even assuming futility persists as a potential exception to AEDPA's exhaustion requirement, it does not excuse Alfaro's failure to exhaust her state court remedies in this instance in which the California Supreme Court has not definitively rejected the claim she now raises in her habeas petition. The panel rejected Alfaro's argument that her failure to exhaust should be excused because requiring her to return to state court would compound the delay she has already suffered. The panel explained that Alfaro will not be prejudiced by application of the exhaustion requirement because so long as her petition is pending in state court, the constitutional

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

violation of which she complains (unconstitutional imposition of the death penalty) will not take place.

The panel held that neither relation back under Rule 15 nor the emergence of new facts renders Alfaro's claim, which was filed as part of her Third Amended Petition more than a year after her conviction became final, timely. Because Alfaro has not previously alleged facts regarding *systemic* delay in California's post-conviction death penalty process, the panel held that her claim does not relate back to earlier, timely-filed claims. The panel concluded that the effort required to aggregate the publicly available information upon which her instant claim relies rendered that information discoverable through the exercise of due diligence.

## COUNSEL

Robin Helene Urbanski (argued), Deputy Attorney General; James William Bilderback II, Supervising Deputy Attorney General; Michael J. Mongan, Deputy Solicitor General; Julie L. Garland, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Edward C. DuMont, Solicitor General; United States Attorney's Office, San Diego, California; for Respondent-Appellant.

Michael David Weinstein (argued) and Celeste Bacchi, Deputy Federal Public Defenders; Hilary Potashner, Federal Public Defender, Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Deborah Johnson, Warden of the Central California Women's Facility, appeals the district court's grant of Petitioner-Appellee Maria Alfaro's petition for habeas corpus relief. We hold that Alfaro's claim is barred by her failure to exhaust available state court remedies, and is untimely under Federal Rule of Civil Procedure 15(c). We therefore reverse the district court's grant of Alfaro's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1992, a jury convicted Alfaro of first degree murder, burglary, and robbery, and also found true the special circumstance that she committed the murder in the course of a first degree burglary and robbery. *People v. Alfaro*, 41 Cal. 4th 1277, 1283, 1288 (2007). After an initial penalty-phase jury failed to reach a verdict, a second penalty-phase jury sentenced Alfaro to death. *Id.* at 1292, 1294.

On November 4, 1999, Alfaro filed a direct appeal of her conviction and sentence, asserting 15 separate grounds for relief. The California Supreme Court affirmed Alfaro's conviction and sentence on August 6, 2007. *See id.* at 1282.

Alfaro filed her first state petition for habeas corpus relief on July 31, 2001, approximately two months after the close of briefing in her direct appeal. The California Supreme Court denied Alfaro's petition in a summary order on November 28, 2007. Alfaro then filed a second state habeas petition on March 2, 2009, asserting 32 additional claims. The California Supreme Court again denied Alfaro's petition in a summary order, issued on June 12, 2013.

Alfaro filed her initial federal habeas petition in the U.S. District Court for the Central District of California on August 1, 2008. She subsequently filed her First Amended Petition on March 2, 2009, and her Second Amended Petition on August 12, 2013.

On July 16, 2014, the district court issued an opinion in an unrelated case, granting relief for a habeas petitioner on the ground that "systemic delay" in the administration of California's death penalty renders any ensuing executions arbitrary, and thus in violation of the Eighth Amendment. *Jones v. Chappell*, 31 F. Supp. 3d 1050, 1053 (C.D. Cal. 2014), *rev'd sub nom.*, *Jones v. Davis*, 806 F.3d 538, 541 (9th Cir. 2015). Alfaro sought leave to amend her habeas petition to add a claim (Claim 29) based on the court's findings and holding in *Jones*. The State opposed Alfaro's motion to amend on the grounds that (1) Alfaro failed to exhaust Claim 29 in state court, (2) Claim 29 asserted a "new rule," the application of which is barred on collateral review by the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989), and (3) her amendment was untimely under Federal Rule of Civil Procedure 15(c)(1)(B).

On September 12, 2014, the district court granted Alfaro leave to amend her petition. The district court acknowledged that Alfaro had failed to exhaust Claim 29 in state court, but cited its order in *Jones* stating that "[r]equiring [the petitioner] to return to the California State Court to exhaust [her] claim would only compound the delay that has already plagued [her] post-conviction review process," and held that Alfaro therefore need not exhaust her claim. In regard to *Teague*, the district court again cited to its order in *Jones* to hold that Alfaro's claim did not present a "new rule," and therefore was not barred by *Teague*. Finally, the district court found that Claim 29 related back to Alfaro's timely-

filed claims because she "set forth the common core of operative facts in her original federal Petition."

Alfaro filed her Third Amended Petition (TAP) on August 8, 2014. On February 5, 2015, the district court granted Alfaro relief on Claim 29: It held that California's post-conviction system for administering the death penalty violates the Eighth Amendment's prohibition against cruel and unusual punishment, and it therefore vacated Alfaro's capital sentence. Pursuant to Federal Rule of Civil Procedure 54(b), the district court determined that there was no just reason for delay in the entry of final judgment, and entered final judgment as to Claim 29 on February 10, 2015. The State timely filed its appeal of the district court's judgment.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253(a). We review *de novo* the district court's exhaustion determination. *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008). We similarly review *de novo* the district court's relation-back determination. *Williams v. Boeing Co.*, 517 F.3d 1120, 1132 (9th Cir. 2008).[1]

---

[1] Alfaro's answering brief suggests that the relevant standard of review for relation-back determinations is abuse of discretion. Alfaro conflates the review standard applied to a district court's ruling on a motion to amend with the standard for reviewing whether a claim actually relates back once leave to amend has been granted. In the latter scenario, with which we deal here, we exercise *de novo* review. *Williams*, 517 F.3d at 1132 n.8.

**ANALYSIS**

## I. Alfaro Is Not Excused from Her Failure to Exhaust Claim 29

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, requires a plaintiff to "exhaust[] the remedies available in the courts of the State" before she may obtain federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is rooted in the principle of comity, and "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (alteration in original) (internal quotation marks omitted). Nevertheless, a habeas petitioner may be excused from exhausting a given claim where (1) "there is an absence of available State corrective process," or (2) "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)–(ii). Neither of these exceptions to AEDPA's exhaustion requirement applies in Alfaro's case.

Under the exception contained in § 2254(b)(1)(B)(ii), which applies when "circumstances exist that render such process ineffective to protect the rights of the applicant," a petitioner may seek redress in federal court "if the [state] corrective process is so clearly deficient as to *render futile* any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (emphasis added). In *Sweet v. Cupp*, 640 F.2d 233 (9th Cir. 1981), we expressly adopted a formulation of the "futility doctrine" that excuses a petitioner's failure to exhaust state remedies "if the highest state court has recently

addressed the issue raised in the petition and resolved it adversely to the petitioner, in the absence of intervening United States Supreme Court decisions on point or any other indication that the state court intends to depart from its prior decisions." *Id*. at 236.   We reasoned that under such circumstances, requiring exhaustion would not further the purpose of comity, but rather "would only create an unnecessary impediment to the prompt determination of individuals' rights." *Id*.

The Supreme Court's decision in *Engle v. Isaac*, 456 U.S. 107 (1982) arguably called *Sweet*'s reasoning into doubt.  *Engle* considered whether a state's procedural bar on appellate consideration of a claim permitted a petitioner to raise that claim on federal habeas review, despite the petitioner's failure to raise it below.  *Id*. at 125.  The *Engle* Court observed that "[t]he state appellate courts have not had a chance to mend their own fences and avoid federal intrusion," and "reaffirm[ed], therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief." *Id*. at 129.  A petitioner "may not bypass the state courts simply because [s]he thinks they will be unsympathetic to the claim." *Id*. at 130.

The State argues that *Engle* effectively overruled *Sweet*'s endorsement of the futility doctrine such that the California Supreme Court's potentially adverse view of Alfaro's claim does not excuse her from exhausting available state court remedies. *See Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993) (describing how *Engle* called into question the "short-lived 'futility doctrine' to avoid procedural default").**[2]**  We

---

**[2]** We note, however, that we have yet to expressly overrule *Sweet*. On the contrary, we have cited to it favorably post-*Engle*.  *See, e.g.*,

need not, however, rule on the continued viability of the rule from *Sweet*: Even assuming that a state supreme court's prior rejection of a petitioner's claim excuses that petitioner's failure to exhaust, the circumstances of Alfaro's case do not support application of this exception. Alfaro argues that the California Supreme Court rejected a claim identical to hers in *People v. Seumanu*, 61 Cal. 4th 1293 (2015). There the California Supreme Court considered a defendant's direct appeal asserting the claim, based upon the district court's opinion in *Jones*, that "systemic delay in resolving postconviction challenges to death penalty judgments has led to a constitutionally intolerable level of arbitrariness in the implementation of the penalty." *Id*. at 1368. The California Supreme Court held that, "assuming such a claim exists," the petitioner had failed to provide sufficient evidence to prevail. *Id*. The court acknowledged that a "*Jones* claim" differs from a typical delay-based "*Lackey*" claim. *Id*. at 1372; *see also Lackey v. Texas*, 514 U.S. 1045 (1995) (Stevens, J., mem. op. respecting denial of cert.). While the California courts have consistently rejected *Lackey* claims, which assert that "delay in deciding postconviction challenges in capital cases constitutes cruel and unusual punishment" because it unmoors the

---

*Gardner v. Pitchess*, 731 F.2d 637, 640 (9th Cir. 1984). Furthermore, the Supreme Court has at least suggested that futility might still present a viable excuse to a petitioner's failure to exhaust post-*Engle*. *See Lynce v. Mathis*, 519 U.S. 433, 436 n.4 (1997) (noting the petitioner's failure to exhaust, but stating that the Court was "satisfied . . . that exhaustion would have been futile" because the Florida Supreme Court had recently rejected the same claim being raised by the petitioner and "Respondents [had] not suggested any reason why the Florida courts would have decided petitioner's case differently"). Finally, *Engle* dealt with a petitioner's attempt to evade a state procedural bar, rather than failure to exhaust. While these obstacles to federal habeas relief are related, they are nevertheless distinct concepts. Thus, while the reasoning of *Engle* is relevant to considering excuses to exhaustion, it is not precisely on point.

punishment from its legitimate penological purposes, California courts have not previously considered whether the *arbitrariness* purportedly created by systemic delay might independently support an Eighth Amendment claim. *Seumanu*, 61 Cal. 4th at 1369–71. The California Supreme Court held, however, that even if a *Jones* claim could hypothetically succeed, the "defendant ha[d] not, on [that] record, demonstrated that systemic delays have produced arbitrariness that is violative of the Eighth Amendment." *Id.* at 1374. It therefore rejected the defendant's claim, and stated that "[a]ny such claim is more appropriately presented in a petition for habeas corpus, where a defendant can present necessary evidence outside the appellate record." *Id.* at 1375.

Thus, the *Seumanu* court did not foreclose the possibility of a *Jones*-type claim succeeding on the merits. On the contrary, the court appears to invite future habeas petitioners to raise such a claim via a state habeas petition. *See id.* Alfaro cites to the California Supreme Court's brief statement in *People v. Clark*, 63 Cal. 4th 522 (2016), reiterating its rejection of *Lackey* claims and noting that it has "also recently rejected a variant of this constitutional argument as raised in *Jones v. Chappell*," *id.* at 645 (citing *Seumanu*, 61 Cal. 4th 1293), as indicating the California Supreme Court's foreclosure of *Jones* claims. However, the *Clark* court offered no analysis of *Seumanu* or *Jones* beyond its accurate—albeit somewhat incomplete—observation that *Seumanu* rejected a *Jones* claim. The *Clark* court did not amend or expand upon the express statement in *Seumanu* that, while the claim in *that* case could not succeed, a similar *type* of claim could potentially be considered on state habeas review.

The California Supreme Court admittedly "sent conflicting signals" regarding future delay-based claims, *Jones*, 806 F.3d at 555 (Watford, J., concurring), insofar as it stated that even assuming the facts presented to the district court in *Jones* were true, it would not grant relief. *Seumanu*, 61 Cal. 4th at 1375. Nevertheless, in light of the *Seumanu* court's consistent emphasis on the insufficiency of the record and its apparent willingness to consider a *Jones*-type claim on habeas review, the California Supreme Court has not definitively rejected the claim Alfaro now raises in her petition for habeas relief. Therefore, even assuming that futility persists as a potential exception to AEDPA's exhaustion requirement, it does not excuse Alfaro's failure to exhaust her state court remedies in this instance.

Alfaro alternatively argues that her failure to exhaust the available state remedies should be excused because "requiring Alfaro to return to state court would compound the delay she has already suffered." We have held that "since excessive delay in obtaining an appeal may constitute a due process violation, a prisoner need not fully exhaust [her] state remedies if the root of [her] complaint is [her] inability to do so." *Coe v. Thurman*, 922 F.2d 528, 530–31 (9th Cir. 1990); *see also Phillips v. Vasquez*, 56 F.3d 1030, 1035 (9th Cir. 1995); *Okot v. Callahan*, 788 F.2d 631, 633 (9th Cir. 1986) (per curiam). This principle does not, however, justify Alfaro's failure to exhaust.

Unlike the petitioners in *Coe*, *Phillips*, and *Okot*, the root of Alfaro's complaint is not her inability to obtain timely resolution of a challenge to her conviction. Rather, her claim asserts that system-wide delays render the few executions that ultimately *do* occur arbitrary and without penological justification. Put differently, the ultimate harm she asserts is not that a meritorious claim will continue to go unaddressed

because of delay, it is that inordinate delay will render her future execution, if it ever occurs, arbitrary, and therefore unconstitutional.**[3]** Thus, while asking the petitioner in *Coe* to return to state court would only have compounded the injury complained of, here Alfaro will not be prejudiced by application of the exhaustion requirement: So long as her petition is pending in state court, the constitutional violation of which she complains (arbitrary, and therefore unconstitutional, imposition of the death penalty) will not take place. *See Jones*, 806 F.3d at 555 (Watford, J., concurring) ("The only relief Jones seeks on this claim is invalidation of his death sentence. There is no risk that he will be executed before the California Supreme Court could rule on the merits of his claim. Thus, requiring Jones to pursue the remedies available to him in the California Supreme Court, even if that results in some additional period of delay, does not render the state corrective process 'ineffective.'"). The fact that Alfaro's claim implicates delay in California's post-conviction process therefore does not excuse her failure to exhaust her present claim.

## II. Alfaro's Claim is Barred as Untimely under Federal Rule of Civil Procedure 15(c)

AEDPA imposes a one-year statute of limitations on claims raised by petitions for habeas relief, which runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Alfaro's

---

**[3]** At oral argument, Alfaro's counsel noted that Alfaro does have additional claims pertaining to the merits of her conviction that are going unaddressed as a result of delay. However, no such claims are before us on this appeal, nor does any prejudice she might suffer from the delay required to exhaust *those* claims excuse her failure to exhaust her present Eighth Amendment claim.

conviction became final on March 3, 2008. *See Alfaro v. California*, 552 U.S. 1245 (2008) (denial of pet. for cert.). Alfaro filed Claim 29 on August 8, 2014, as part of her TAP. Alfaro nevertheless argues that her claim should not be barred as untimely because it relates back to an earlier, timely-filed claim, or alternatively because the facts underlying Claim 29 were not reasonably discoverable until within a year prior to her TAP. The district court found that Alfaro's claim related back to her initial, timely-filed petition, and therefore did not address her contention regarding the discoverability of Claim 29's predicate facts. We find that neither relation back nor the emergence of new facts renders Alfaro's Claim 29 timely.

A habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under Federal Rule of Civil Procedure 15(c), a petitioner may add an otherwise untimely claim to her habeas petition if it relates back to a timely-filed claim. Rule 15(c) provides, in relevant part, that an amendment relates back to a timely-filed claim when the newly-asserted claim "arose out of the conduct, transaction, or occurrence set out" in the previous filing. Fed. R. Civ. P. 15(c)(1)(B). As the Supreme Court explained in *Mayle v. Felix*, 545 U.S. 644 (2005), Rule 15(c) permits relation back only when new claims "arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes." *Id*. at 657 (internal quotation marks omitted). Accordingly, we must consider whether Alfaro's Eighth Amendment systemic delay claim shares "a common core of operative facts" with one of her timely-filed claims. *Id*. at 664.

Claim 29 asserts that "inordinate and unpredictable delay in California's death penalty system leads to the arbitrary imposition of the death penalty." The alleged "arbitrariness" stems from the fact that, "for most [California capital inmates], systemic delay has made their execution so unlikely that the death sentence . . . has been quietly transformed into one no rational jury or legislature could ever impose: *life in prison, with the remote possibility of death*." As this text demonstrates, the core of Alfaro's claim is the "unlikeliness" and uncertainty created by "systemic delay." But the relative likelihood of an inmate's execution only becomes apparent when viewing the system as a whole. The probability of a given outcome in any particular instance cannot be determined by considering that particular instance in a vacuum. Rather, context is required. Alfaro's Claim 29 provides the necessary context by citing to the district court's order in *Jones*, which in turn relied on data regarding the overall percentage of death row inmates who have been executed since 1978, as well as additional statistics indicating pervasive delay in California's administration of the death penalty. These core operative facts underlying Claim 29 provide the context necessary for alleging the statistical unlikeliness of any one prisoner facing execution, by illustrating the *system-wide* delay that Alfaro alleges plagues the California death penalty scheme.

Alfaro points to facts alleged in her earlier-filed complaints regarding the procedural history of her own case, and the delay she has personally experienced, to argue that Claim 29 relates back to those earlier filings. Such facts might perhaps support a delay-based *Lackey* claim. They do not, however, suffice to support the *Jones* claim she now raises. The key distinguishing factor between *Lackey* and *Jones* claims is that the latter concern *systemic* delay that creates arbitrariness in executions. As explained above, no

one petitioner's case can support such a claim on its own. System-wide data is needed.  Because Alfaro has not previously alleged facts regarding *systemic* delay in California's post-conviction death penalty process, her claim does not relate back to her timely-filed petition.

Alternatively, Alfaro argues that Claim 29 relates back to Claim 27 of her Second Amended Petition.[4]  Once again, however, Claim 27 and Claim 29 do not allege share a common factual basis.  Whereas Claim 29 concerns systemic delay in the administration of California's death penalty, Claim 27 addresses systemic failures in the State's conviction and sentencing process.  Alfaro points to *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013) to argue that the difference in timing of claims (here, pre-sentencing versus post-sentencing) does not preclude relation back.  Her argument misses the point: The barrier to relation back in her case is not the differing times at which her claims arose, or the different legal grounds upon which they rest.  Rather, it is the difference between their respective factual predicates. The facts relevant to Claim 27 concern California's death penalty statute and sentencing procedures.  Nowhere does Claim 27 point to systemic data regarding the fate of California inmates *after* they are sentenced to death.

Alfaro contends that, if Claim 29 does not relate back, it was nevertheless timely filed because the specific factual predicate upon which it rests "first became discoverable through the 'exercise of due diligence' on June 1, 2014," when exhibits were filed in support of the petitioner's similar

---

[4] Although Claim 27 is contained within a petition filed well past the one-year limitation period, the parties agree that Claim 27 properly relates back to Alfaro's timely-filed petition.

claim in *Jones*. Alfaro points to data collected and filed by the Habeas Corpus Resource Center (HCRC), including

> the number of inmates without habeas corpus counsel as of June 2014, the annual number of habeas counsel appointments from 2008 to the present, the rate at which the California Supreme Court issues orders to show cause in habeas cases, the average length of time it takes for respondents to file responses to orders to show cause, and the number of fully briefed habeas cases awaiting decision,

as evidence that could not have been discovered through the exercise of due diligence prior to its having been filed in *Jones*. While we acknowledge that *Jones* aggregated in an accessible manner the statistical information necessary to bring Alfaro's Claim 29, we do not find that the underlying information's previously diffuse format rendered it beyond the reach of diligent discovery.

As the *Jones* court's opinion states, the appendix filed in *Jones v. Chappell* containing the status of individuals sentenced to death in California since 1978—including the number of inmates who have been executed, had their cases stayed, or died in custody from causes other than execution, and the number who currently have habeas petitions pending before either the federal or California courts—"was compiled using publicly available information from the court dockets of the four federal judicial districts in California, the public docket of the California Supreme Court, and the [California Department of Corrections and Rehabilitation's] Condemned Inmate List (July 2014) and List of Inmates Who Have Died Since 1978 (2014)." 31 F. Supp. 3d at 1069 n.4. In other words, HCRC compiled the

relevant facts into comprehensive charts to support Jones' claim of systemic delay, but they did so using publicly available facts. The only sense in which the data relied upon by Jones—and consequently by Alfaro—could not have been discovered earlier through the "exercise of due diligence" is that statistics from 2014 would of course not have been available prior to that year. But the cited statistics appear to be updated regularly, and Alfaro does not argue that the nature of the data changed between the running of the one-year period following final judgment in her case and the filing of her TAP (on the contrary, her claim alleges system-wide delay that goes back decades).

We acknowledge and sympathize with the fact that habeas petitioners have limited resources to dedicate to discovery. However, we cannot say that the effort required to aggregate the publicly available information upon which Claim 29 relies rendered that information undiscoverable through the exercise of due diligence. We therefore find Claim 29 barred as untimely.[5]

---

[5] The State has argued, both in its briefing and at oral argument, that this case should be disposed of through application of the Supreme Court's prohibition against a petitioner's assertion of "new rules" for the first time on collateral review. *See Teague v. Lane*, 489 U.S. 288 (1989). We acknowledge that we have previously found that the claim now asserted by Alfaro constitutes a "new rule" that does not fall under the exception to the *Teague* bar for "substantive" new rules. *See Jones v. Davis*, 806 F.3d 538, 551–53 (9th Cir. 2015). However, subsequent Supreme Court precedent has cast some doubt on our conclusion in *Jones* that the claim now before us constitutes a "procedural" rather than a "substantive" rule.

In *Jones*, we justified our classification of the claim as procedural on the basis that Jones "[did] not assert that he fit[] into one of the traditionally recognized classes of persons whose 'status' is an intrinsic

quality, such as insanity or intellectual disability," and that "[u]nder [Jones'] view, almost any procedural rule could be characterized as substantive merely by defining the petitioner as belonging to a class of persons with the 'status' of those whose convictions or sentences were obtained through an unconstitutional procedural rule." *Id*. at 552–53. Following our issuance of the *Jones* opinion, the Supreme Court decided *Welch v. United States*, 136 S. Ct. 1257 (2016), holding that its prior decision striking the residual clause of the Armed Career Criminals Act as void for vagueness set forth a substantive rule that applies retroactively on collateral appeal. *Id.* at 1265. This undercuts the argument that a rule is procedural merely because the rule does not address a group defined by some intrinsic quality.

Furthermore, the Court's discussions in both *Welch* and the recently-decided case *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), call into question the notion that if the claim asserted here presents a substantive rule, the substantive/procedural distinction loses any meaning. Both *Welch* and *Montgomery* develop *Teague* by clarifying the relevant distinction between substantive and procedural rules: The failure to apply a procedural rule does not necessarily invalidate every result, whereas failure to apply a substantive rule leaves no possibility of a legitimate outcome. *See, e.g.*, *Welch*, 136 S. Ct. at 1265–67; *Montgomery*, 136 S. Ct. at 729–32. This is why, upon collateral review, the balance between comity and finality on the one hand, and constitutional rights on the other, tips against retroactive application when a rule is procedural, and in favor when it is substantive. *See Welch*, 136 S. Ct. at 1266; *Montgomery*, 136 S. Ct. at 732.

Should Alfaro's claim ultimately be found meritorious, it would invalidate California's present system for administering the death penalty. This suggests that, under the Supreme Court's evolving interpretation of *Teague*, the rule she seeks to advance may present a substantive rule. However, because Alfaro's petition can be resolved on alternative procedural grounds, we do not now decide the continued vitality of our holding to the contrary in *Jones*.

## CONCLUSION

Alfaro failed to exhaust the available state remedies for Claim 29, and that claim was also untimely filed. Because Alfaro's claim is barred on these procedural grounds, we do not address the merits of her Eighth Amendment argument.[6]

REVERSED.

---

[6] Alfaro has filed a motion for judicial notice of a variety of materials, consisting of (1) a California Supreme Court news release, (2) a court statistics report produced by the Judicial Council of California, (3) two news releases from the Judicial Council of California, (4) state-court dockets from Alfaro's state proceedings, (5) the status of certain docketed California capital cases, (6) the CDCR Condemned Inmates list, (7) articles from the National Institute of Justice and Death Penalty Information Center, and (8) a Gallup poll on the death penalty. As Alfaro indicates in her motion, these materials all pertain to the merits of her Eighth Amendment claim. Because we do not reach Alfaro's claim on the merits, we deny her motion as moot.